UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DEANNA E. NELSON,                      )
                                       )      No. 11-CV-00003-JPH
            Plaintiff,                 )
                                       )
v.                                     )      ORDER GRANTING PLAINTIFF'S
                                       )      MOTION FOR SUMMARY
MICHAEL J. ASTRUE,                     )      JUDGMENT AND REMANDING FOR
Commissioner of Social Security,       )      ADDITIONAL PROCEEDINGS
                                       )      PURSUANT TO SENTENCE FOUR 42
            Defendant.                 )      U.S.C. § 405(g)
                                       )
                                       )
                                       )

        BEFORE THE COURT are cross-Motions for Summary Judgment. (ECF No. 13, 16.) Attorney Maureen J. Rosette represents plaintiff; Special Assistant United States Attorney Thomas S. Inman represents defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 7.) After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** plaintiff's Motion for Summary Judgment and **DENIES** defendant's Motion for Summary Judgment.

## JURISDICTION

        Plaintiff Deanna E. Nelson (plaintiff) protectively filed for supplemental security income (SSI) and disability insurance benefits (DIB) on October 16, 2006. (Tr. 107, 112, 122.) Plaintiff alleged an onset date of March 28, 2006. (Tr. 107, 110, 112.) Benefits were denied initially and on reconsideration. (Tr. 76, 87.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Robert S. Chester on October 21, 2008. (Tr. 31-71.) Plaintiff was represented by counsel and testified at the hearing. (Tr.34-61.) Vocational expert K. Diane Kramer also testified. (Tr. 62-70.) The ALJ denied benefits (Tr. 16-28) and the Appeals Council denied review. (Tr. 1.) The matter is now before

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -1

this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcripts, the ALJ's decision, and the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

Plaintiff was 41 years old at the time of the hearing. (Tr. 34.) She dropped out of school before her junior year of high school but later got a GED. (Tr. 42.) Plaintiff attended community college for a year and a half but eventually dropped out. (Tr. 42.) Later, she attended community college to become a medical office specialist but did not complete the degree. (Tr. 44.) She has work experience in retail, in a doctor's office and as an office manager for a paint company. (Tr. 45.) Plaintiff testified she hurt her back lifting a heavy bag of dog food while working in retail. (Tr. 43.) She is in pain all the time. (Tr. 47, 50.) Her neck, shoulder blades, lower back, hips and fingers all hurt. (Tr. 48.) Plaintiff sometimes uses a neck brace. (Tr. 35.) She tried physical therapy but it caused back spasms. (Tr. 36-37.) Plaintiff has severe back spasms even though she takes medication. (Tr. 37.) Her pain is irritated by cold weather. (Tr. 48.) When she has severe pain she goes to the emergency room. (Tr. 48.) Plaintiff has also been diagnosed with fibromyalgia. (Tr. 48.) She gets dizzy spells and wobbles due to vertigo. (Tr. 35.) She has anxiety, constipation, hemorrhoids and nausea. (Tr. 50.) Plaintiff has tried a number of medications which had negative side effects. (Tr. 50.) She testified she lies down for up to an hour three to four times a day. (Tr. 56.)

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler,* 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan,* 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th Cir.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -2

1988). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze,* 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Services,* 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if his impairments are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -3

benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -4

**ALJ'S FINDINGS**

At step one of the sequential evaluation process, the ALJ found plaintiff did not engage in substantial gainful activity since March 28, 2006, the alleged onset date. (Tr. 18.) At step two, the ALJ found plaintiff has the following severe impairments: degenerative disk disease cervical spine, rotator cuff tear, fibromyalgia, major depressive disorder and pain disorder. (Tr. 18.) At step three, the ALJ found plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 19.) The ALJ then determined:

> [T]he claimant has the residual functional capacity to perform less than a full range of light work. The claimant can lift or carry 20 pounds occasionally and frequently lift or carry 10 pounds. The claimant can sit for six hours and stand or walk for six hours in an eight-hour workday. She would need to be able to alternate between sitting and standing. She can occasionally use her upper extremities for overhead reaching. She should avoid concentrated exposure to hazards. She can have superficial interaction with the public and coworkers.

(Tr. 20.) At step four, the ALJ found plaintiff is capable of performing past relevant work (Tr. 27.) Thus, the ALJ concluded plaintiff has not been under a disability as defined in the Social Security Act from March 28, 2006 through the date of the decision. (Tr. 28.)

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, plaintiff asserts the ALJ: (1) erroneously assessed plaintiff's mental limitations; (2) improperly considered opinion evidence; and (3) did not properly consider plaintiff's testimony regarding symptoms. (ECF No. 14 at 10-19.) Defendant argues: (1) substantial evidence supports the ALJ's assessment of plaintiff's mental limitations; (2) errors in evaluating the medical opinion evidence were harmless; and (3) the ALJ properly evaluated plaintiff's credibility. (ECF No. 17 at 15-21.)

**DISCUSSION**

1.    **Mental Limitations**

Plaintiff argues the ALJ erroneously determined her only mental limitation was superficial interaction with the public and coworkers. (ECF No. 14 at 13.) Plaintiff argues the ALJ should have given weight to the opinions of Drs. Arnold and Mabee, who both determined plaintiff had additional psychological limitations. (ECF No. 13 at 14.) The ALJ gave little weight to the opinions of Dr. Arnold and Dr. Mabee. (Tr. 26-27.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -5

1    In disability proceedings, a treating physician's opinion carries more weight than an

2 examining physician's opinion, and an examining physician's opinion is given more weight than that

3 of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v.*

4 *Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not

5 contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If

6 contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are

7 supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.

8 1995). Historically, the courts have recognized conflicting medical evidence, the absence of regular

9 medical treatment during the alleged period of disability, and the lack of medical support for doctors'

10 reports based substantially on a claimant's subjective complaints of pain as specific, legitimate

11 reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health*

12 *and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

13    In this case, there are three psychological opinions of record. Dr. Arnold evaluated plaintiff in

14 March 2007 and completed a DSHS Psychological/Psychiatric Evaluation form. (Tr. 263-71.) Dr.

15 Arnold assessed two moderate and one marked cognitive limitations and three moderate and one

16 marked social limitations. (Tr. 269.) In March 2008, Mr. Erickson, M.Ed., LMHC, evaluated plaintiff

17 and completed a DSHS Psychological/Psychiatric Evaluation form.[1] (Tr. 359-69.) Dr. Erickson

18 assessed two moderate cognitive limitations and four moderate social limitations. (Tr. 361.) Finally,

19 in August 2008, Dr. Mabee prepared a psychological report and completed a DSHS Medical Source

20 Statement of Ability to Do Work-Related Activities form. (Tr. 331-42.) On that form, Dr. Mabee

21 assessed five limitations ranging from mild to moderate, two moderate limitations, and one limitation

22 ranging from moderate to marked. (Tr. 340-41.) The ALJ rejected all three psychological opinions.

23

24    [1]The ALJ mistakenly referred to Mr. Erickson as "Dr. Erickson" after erroneously noting his

25 credential as Ed.D., LMHC. (Tr. 26, 362, 369.) However, Dr. Mabee co-signed the report and DSHS

26 evaluation form prepared by Mr. Erickson and the report therefore qualifies as the opinion of an

27 acceptable medical source. (Tr. 361, 368) Thus, the ALJ's error is harmless. *See Carmickle v. Comm'r,*

28 *Soc. Sec. Admin*, 533 F.3d 1155, 1162 (9th Cir. 2008). The court references the March 2008

psychological evaluation as Mr. Erickson's report for clarity.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -6

(Tr. 26-27.) As observed by the ALJ, there are no state consulting psychologist Psychiatric Review Technique assessments or Mental Residual Functional Capacity Assessments in the record. (Tr. 26.)

Plaintiff argues the ALJ improperly rejected Dr. Arnold's opinion and Dr. Mabee's opinion, but appears to concede Mr. Erickson's opinion was properly rejected. Although there appears to be no contradictory psychological opinion in the record, plaintiff asserts specific and legitimate reasons are required to properly reject the opinions of Drs. Arnold and Mabee rather than clear and convincing reasons. (ECF No. l4 at 13, 15.)

**a.    Dr. Mabee**

Plaintiff argues the ALJ misstated Dr. Mabee's opinion and did not set forth specific, legitimate reasons supported by substantial evidence for rejecting his assessment. (ECF No. 14 at 14-15.) The ALJ stated Dr. Mabee opined plaintiff has mild problems with understanding and remembering simple instructions but she would be moderately to markedly impaired in carrying out simple instructions and making appropriate judgments due to increased pain. (Tr. 27.) Plaintiff cites the DSHS form completed by Dr. Mabee and points out he assessed mild to moderate limitations in carrying out simple instructions and mild to moderate limitations in making judgments on simple work-related decisions. (ECF No. 14 at 14, Tr. 340.) Plaintiff correctly summarizes Dr. Mabee's assessment on the DSHS form and the ALJ correctly cited Dr. Mabee's narrative statement of residual functional capacity. (Tr. 336, 340.) In the narrative, Dr. Mabee opined plaintiff would have moderate to marked difficulty carrying out simple instructions and making appropriate judgments at work, which is inconsistent with the assessment of mild to moderate limitations in those categories on the DSHS form. (Tr. 336, 340.) Thus, while the ALJ did not necessarily err in summarizing Dr. Mabee's opinion, he failed to adequately address the ambiguity in Dr. Mabee's assessment of limitations.

In rejecting Dr. Mabee's opinion, the ALJ indicated the cognitive limitations assessed are not supported by the clinical test results. (Tr. 27.) If an opinion is not adequately supported by medical findings, it may properly be rejected. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The ALJ discussed Dr. Mabee's test results, noting plaintiff scored within normal limits on the Mini Mental Status Examination. (Tr. 25, 334.) Plaintiff's low average immediate memory and general memory scores indicate mild to moderate problems with immediate and delayed retrieved of

learned information. (Tr. 334.) The ALJ concluded these test results suggest only mild limitations which would not cause limitations in plaintiff's ability to work. (Tr. 25.) However, Dr. Mabee noted plaintiff's WMS-II scores from previous testing indicating high average intellectual ability but had declined during the August 2008 testing, suggesting borderline intellectual ability. (Tr. 335.) Dr. Mabee indicated it is possible plaintiff's decline in scores could be attributed to her reported pain and depressive symptoms. Therefore, test results appear to support Dr. Mabee's conclusion and seem consistent with his functional assessment that increased pain would cause mild limitations ranging to moderate and moderate symptoms ranging to marked with pain. (Tr. 335-36, 340-41.)

The ALJ's determination that test results do not support Dr. Mabee's opinion overlooks Dr. Mabee's findings and ignores his professional judgment. "The subjective judgments of treating physicians are important, and properly play a part in their medical evaluations. Accordingly, the ultimate conclusions of those physicians must be given substantial weight; they cannot be disregarded unless clear and convincing reasons for doing so exist and are set forth in proper detail." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). An ALJ must not substitute his medical judgment for a doctor's. *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990). Dr. Mabee is better suited than the ALJ to interpret psychological test results. The ALJ's consideration of Dr. Mabee's opinion is selective and ignores findings and conclusions supporting the limitations assessed by Dr. Mabee. The reason given for rejecting the cognitive limitations assessed by Dr. Mabee are therefore not supported by substantial evidence. The ALJ failed to adequately address ambiguities in Dr. Mabee's opinion and did not provide reasons supported by substantial evidence for rejecting the opinion. As a result, the ALJ erred.

**b.    Dr. Arnold**

Plaintiff argues the ALJ did not set forth any specific or legitimate reasons supported by substantial evidence for rejecting Dr. Arnold's opinion. (ECF No. 14 at 13.) In March 2007, Dr. Arnold prepared a psychological assessment report and completed a DSHS Psychological/Psychiatric Evaluation form. (Tr. 263-71.) As noted by the ALJ, Dr. Arnold opined plaintiff is moderately limited in the ability to learn new tasks and perform routine tasks and markedly limited in the ability to exercise judgment and make decisions. (Tr. 26.) Dr. Arnold indicated plaintiff is also markedly

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -8

limited in the ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting, and moderately limited in the ability to relate appropriately to coworkers and supervisors, interact in public contacts, control physical and motor movements, and maintain appropriate behavior. (Tr. 26, 269.) The vocational expert testified there would be no work available to a hypothetical person with those limitations. (Tr. 69-70.)

Plaintiff asserts the ALJ summarized the limitations assessed by Dr. Arnold but did not cite any reasons for rejecting them. (ECF No. 14 at 13.) However, careful reading of the ALJ's opinion reflects the ALJ gave two reasons for rejecting the opinions of Dr. Arnold and Mr. Erickson. (Tr. 26.) The ALJ stated the DSHS psychological evaluations were given little weight, summarized the two evaluations, then stated: "The cognitive limitations given are in excess of the mild limitations shown by the clinical test results discussed above. Furthermore, the moderate social limitations given on the psychological evaluation forms are not consistent with the fact the claimant has been able to maintain friendships." (Tr. 26.) The ALJ then cited one additional reason for rejecting Mr. Erickson's opinion. (Tr. 26.) It is apparent from the language that the reasons given for rejecting the DSHS opinions applied to both Mr. Erickson's assessment and to Dr. Arnold's assessment. Since plaintiff does not challenge the validity of the reasons given for rejecting Mr. Erickson's opinion, the court considers whether these reasons are supported by substantial evidence with respect to Dr. Arnold's opinion.

With respect to Dr. Arnold's assessment of social limitations, the ALJ concluded they are inconsistent with plaintiff's ability to maintain friendships. (Tr. 26.) The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating a medical opinion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). However, the ability to maintain friendships is not the same as being able to work with people who are less understanding or aware of a plaintiff's limitations. *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001). The non-specific references in the record to friends do not constitute a specific, legitimate reason for rejecting the opinion of an acceptable medical source.[2] Additionally, the marked social

_____

[2]The ALJ does not cite the record to support "the fact the claimant has been able to maintain friendships." (Tr. 26.) The ALJ noted testimony that plaintiff was staying with a friend at the time of the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -9

limitation assessed by Dr. Arnold is a limitation on the ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting, which is not a factor in maintaining social friendships. Plaintiff's ability to maintain some friendships of unknown quality or duration does not mean she can tolerate the social requirements of work. The ALJ did not adequately justify rejection of Dr. Arnold's assessment of social limitations. As a result, the ALJ failed to adequately address Dr. Arnold's opinion.

The ALJ also rejected Dr. Arnold's assessment of cognitive limitations because the cognitive limitations assessed exceeded the results of objective testing. (Tr. 26.) A medical opinion may be rejected by the ALJ if it is conclusory, contains inconsistencies, or is inadequately supported. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Thomas*, 278 F.3d at 957. Although Dr. Arnold wrote "see narrative" when asked to describe the basis for the assessment of functional limitations, his narrative describes the test results but contains little interpretative discussion. (Tr. 264-65, 269.) The test results reported by Dr. Arnold could be interpreted as essentially positive: good short-term and adequate long-term memory, good concentration, at least low average intellectual functioning and normal Trails Making and Mental Status Exam results. (Tr. 265.) However, the MMPI-2 results suggested somatoform disorder indicating emotional issues are commonly transmuted into perceived physical problems. (Tr. 265.) Secondary gain was noted to be a common component and plaintiff's profile suggested depression, anxiety, mistrust and a passive-aggressive interpersonal style. (Tr. 265.) The court need not determine whether the ALJ was justified in rejecting Dr. Arnold's cognitive limitations because the ALJ otherwise erred with respect to Dr. Arnold's opinion. On remand, the ALJ should reconsider Dr. Arnold's assessment and ensure rejection of any limitations is justified by legally sufficient reasons.

     **c.**    **Substantial Evidence**

Even if the ALJ had properly rejected Dr. Arnold's and Dr. Mabee's assessments of

---

hearing (Tr. 21), and the record reflects plaintiff mentioned she was helping a friend with housework which set off muscle spasms in her back. (Tr. 303.) There is little evidence regarding the number, nature or duration of plaintiff's friendships in the record.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -10

limitations, once he rejected all three psychological opinions in the record, there was no basis from which a finding supported by substantial evidence could be made about plaintiff's mental limitations. In rejecting all of the mental limitations assessed after three psychological examinations, except for a limitation on superficial interaction with the public and coworkers, the ALJ acted as his own medical expert, substituting his opinion for the professional opinions of the psychologists regarding their exam results. *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir.1975); *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir.1999) (As a lay person, an ALJ is "not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion"); *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir.1998) (" '[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion ....' " (citations omitted)); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir.1996) (ALJ "must not succumb to the temptation to play doctor and make [his] own independent medical findings."). Once the ALJ rejected the opinions of Drs. Arnold and Mabee as well as Mr. Erickson, the ALJ's determination regarding mental limitations was not based on any psychological opinion evidence. If there was no valid psychological evidence in the record, the ALJ should have developed the record by obtaining another psychological examination or calling an expert witness to address plaintiff's mental health issues. *See Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996); *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir.1998).

**2.      Physical Limitations**

　　　　**a.      Ginger Blake, ARNP**

Plaintiff argues the ALJ improperly rejected the opinion of Ginger Blake, ARNP. Ms. Blake began providing care for plaintiff in September 2006. (Tr. 222.) In February 2007, Ms. Blake completed a DSHS Physical Evaluation form indicating plaintiff was markedly limited in lifting, handling and carrying due to cervical disc disorder, and moderately limited in lifting, handling, carrying and seeing due to derangement of the shoulder and a pupillary abnormality. (Tr. 353.) Ms. Blake also opined plaintiff was restricted to 30 minutes of sitting and had difficulty with overhead reaching, pushing, pulling, and handling due to right arm pain and weakness. (Tr. 353.) She opined plaintiff was limited to sedentary work. (Tr. 353.)

The ALJ gave little weight to Ms. Blake's opinion. (Tr. 26.) Since Ms. Blake is a registered

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -11

nurse practitioner, she is an "other source" under the regulations. 20 C.F.R. §§ 404.1513(d), 416.913(d). The opinion of an acceptable medical source is given more weight than that of an "other source." 20 C.F.R. §§ 404.1527, 416.927; *Gomez v. Chater*, 74 F.3d 967, 970-71 (9ᵗʰ Cir. 1996). However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9ᵗʰ Cir. 1987). Pursuant to *Dodrill v. Shalala*, 12 F.3d 915 (9ᵗʰ Cir. 1993), an ALJ is obligated to give reasons germane to "other source" testimony before discounting it.

The ALJ asserted several reasons for rejecting Ms. Blake's opinion. (Tr. 26.) First, the ALJ stated Ms. Blake was not plaintiff's treating provider and plaintiff was not present at the time the paperwork was completed. (Tr. 26.) The ALJ also asserted Ms. Blake had never seen plaintiff at the time the DSHS form was completed. (Tr. 26.) Defendant acknowledges the ALJ erred in asserting Ms. Blake was not a treating source since she saw plaintiff in September, October, and December 2006. (ECF No. 17 at 18, Tr. 222, 227, 232.) The ALJ also saw plaintiff on February 23, 2007, the date noted on the DSHS form as the examination date, although the form was completed on March 20, 2007. (Tr. 235, 351.) Thus, the ALJ's first two reasons for rejecting Ms. Blake's opinion are not supported by the evidence and the ALJ erred.

The ALJ also pointed out Ms. Blake is not an acceptable medical source and her opinion is entitled to less weight than physician opinions.[3] (Tr. 26.) While the ALJ is correct that the opinion of an ARNP is entitled to less weight than the opinion of a physician, it is still medical evidence which

---

[3]Plaintiff cites *Gomez v. Chater*, 74 F.3d 967 (9ᵗʰ Cir. 1996), and argues Ms. Blake is an acceptable medical source because she is "part of the CHAS Clinic and was working in conjunction with doctors." (ECF No. 14 at 16.) This argument is outdated. The Social Security Regulation relied upon in the *Gomez* ruling (20 C.F.R. § 416.913(a)(6)) has been amended and no longer includes "interdisciplinary team," under the definition of "acceptable medical sources." See 20 C.F.R. §§ 404.1513(a)(1-5), 416.913(a) (1-5). *Gomez* therefore does not apply. Even if the "interdisciplinary team" approach noted in *Gomez* could apply, it would not apply in this case. There is no evidence ARNP Blake was working closely with any particular doctor as described in *Gomez*.74 F.3d at 971.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -12

much be considered. *See* 20 C.F.R. § 404.1513(e)(2). This, Ms. Blake's status as an ARNP is not a germane reason for rejecting the opinion. The ALJ failed to cite a germane reason supported by substantial evidence for rejecting Ms. Blake's opinion. Therefore, the ALJ erred.

**b.    Dr. Arthurs**

Plaintiff argues the ALJ did not provide specific or legitimate reasons for rejecting the opinion of Dr. Arthurs. (ECF No. 14 at 17.)   Dr. Arthurs began seeing plaintiff in October 2007 when Ms. Blake was on maternity leave. (Tr. 301.) In February 2008, Dr. Arthurs completed a DSHS Physical Evaluation form and indicated plaintiff's ability to perform basic work-related activities was moderately limited due to cervical spinal canal stenosis, anxiety, lumbar degenerative disc disease, bursitis of the shoulder and partial rotator cuff tear. (Tr. 357.) Dr. Arthurs opined plaintiff was limited to sedentary work with limited mobility for balancing, bending, climbing, crouching, handling, kneeling, pulling, pushing, reaching, sitting and stooping. (Tr. 357.)

The ALJ gave little weight to Dr. Arthurs opinion for several reasons. (Tr. 26.) First, the ALJ indicated Dr. Arthurs is "not very convincing regarding the claimant's level of disability." (Tr. 26.) Dr. Arthurs noted he doubted plaintiff is motivated to return to work and keeps requesting MRIs with unrealistic expectations. (Tr. 358.) While Dr. Arthurs' comments may reflect on plaintiff's credibility, it is not clear how these statements suggest his opinion is less reliable or an overstatement of plaintiff's condition. To the contrary, if Dr. Arthurs had reservations about plaintiff's motivation and expectations, it seems he would be less likely to be generous in his functional assessment. An ALJ may not assume that doctors routinely lie in order to help their patients collect disability benefits. *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir.1995). Thus, this is not a specific, legitimate reason for rejecting the opinion.

The second reason asserted by the ALJ for rejecting Dr. Arthurs' opinion is Dr. Arthurs' is not plaintiff's treating physician. (Tr. 26.) However, as acknowledged by defendant, the ALJ erred in asserting Dr. Arthurs is not a treating physician. (ECF No. 17 at 18.) Dr. Arthurs saw plaintiff in October, November, and December 2007 and in February 2008before completing the DSHS form. (Tr. 287, 291, 294, 298, 301.) As a result, the ALJ's second reason for rejecting Dr. Arthurs' opinion is not supported by substantial evidence.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -13

Lastly, the ALJ stated generally the medical evidence "simply does not support limiting the claimant to sedentary work." (Tr. 26.) The ALJ must state more than just a conclusion, he must explain why his interpretation is more correct than the doctors interpretation. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). It is insufficient for the ALJ to reject the opinion of a treating or examining physician by merely stating it is inconsistent with other evidence in the record. *See Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). The ALJ's summary of medical evidence does not adequately explain how Dr. Arthurs' opinion is undermined by that evidence. Thus, this reason does not qualify as a specific, legitimate reason supported by substantial evidence.

Defendant argues that even if the ALJ erred in rejecting the opinions of Ms. Blake and Dr. Arthurs, their opinions that plaintiff can do sedentary work are subsumed in the step four finding that plaintiff can do past relevant work and the error is harmless. (ECF No. 17 at 18-19.) The court need not determine whether the errors in considering Ms. Blake's opinion and Dr. Arthurs' opinion are harmless error because remand is necessary for other reasons. On remand, the ALJ should supply legally sufficient reasons supported by substantial evidence for rejecting the opinions of any medical source.

**3.    Credibility**

Plaintiff argues the ALJ did not properly consider her testimony regarding her symptoms. (ECF No. 21 at 18-19.) In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929.

Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). If there is evidence of a medically determinable impairment likely to cause an alleged symptom and there is no evidence of malingering, the ALJ must provide specific and cogent reasons for rejecting a claimant's subjective complaints. *Id.* at 346. The ALJ may not discredit pain testimony merely because a claimant's reported degree of pain is unsupported by objective medical findings. *Fair v. Bowen*, 885

F.2d 597, 601 (9th Cir. 1989). The following factors may also be considered: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Morgan v. Apfel*, 169 F.3d 595, 601-02 (9th Cir. 1999). In the absence of affirmative evidence of malingering, the ALJ's reasons must be "clear and convincing." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Morgan*, 169 F.3d at 599. The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)(citation omitted).

The ALJ cited a number of reasons supporting the credibility determination, none of which are challenged by plaintiff. (Tr. 22-24.) The ALJ pointed out the radiology reports and clinical evidence show very little degeneration in plaintiff's spine. (Tr. 22, 193, 197, 214, 242-43, 273-74, 298.) While subjective pain testimony may not be rejected solely because it is not corroborated by objective medical findings, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); 20 C.F.R. § 416.929(c)(2). The ALJ pointed out that Dr. Lamb recommended a shoulder injection, but plaintiff never followed-up. (Tr. 22, 274.) An unexplained failure to follow a prescribed or recommended course of treatment may reflect negatively on credibility. *See Fair v. Bowen*, 885 F.2d 597, 603 -604 (9th Cir. 1989). The ALJ also considered Dr. Lamb's opinion that plaintiff's cervical MRI had relatively commonplace findings and no treatment was necessary. (Tr. 22, 273.) *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2003) (finding physician's report noting lack of objective findings and inconsistencies in exam results supported negative credibility finding). The ALJ pointed out Dr. Arthurs doubted plaintiff is motivated to return to work and plaintiff kept asking for MRIs with unrealistic expectations. (Tr. 26, 358.) *Id.* Additionally, the ALJ observed that no treating or examining physician opined plaintiff is disabled.

(Tr. 25.) It is reasonable for the ALJ to consider the fact that no treating or examining physician has found the claimant disabled. *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993); *see also Green v. Heckler*, 803 F.2d 528, 531 (9th Cir. 1986). All of these reasons are clear and convincing reasons supported by substantial evidence which reasonably support the ALJ's negative credibility finding.

The ALJ also considered plaintiff's daily activities and concluded they are not limited to the extent one would expect given the complaints of disabling symptoms and limitations. (Tr. 25.) Evidence about daily activities is properly considered in making a credibility determination. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Daily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). A person may be "quite functional" if they can cook, clean, shop and have interactions with others. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005.) Although such evidence of daily activities may be open to interpretation, if an ALJ's interpretation is rational, the ALJ's determination may be upheld. *Id.* at 681-82. The ALJ observed plaintiff is able to do light household chores such as dusting, mopping using a stick or her foot and paper towels, and doing anything in reach. (Tr. 334, 365.) Plaintiff was losing weight through diet and walking for exercise. (Tr. 35, 333-34, 365.) She can do her own laundry which requires her to go up and down stairs. (Tr. 56-57, 333.) She prepares her own meals and goes grocery shopping. (Tr. 334.) She cared for her roommate's eight-year-old child, feeding the child, getting the child off to school, helping with homework and making the child dinner. (Tr. 365.) These activities could reasonably be interpreted by the ALJ to support a more active lifestyle than plaintiff described and are therefore properly considered as part of the credibility finding.

Based on the foregoing, the ALJ cited clear and convincing reasons supported by substantial evidence justifying the negative credibility finding. Plaintiff does not take issue with any of the reasons cited by the ALJ, but argues the ALJ failed to specifically reject her testimony regarding her need to lie down during the day and the facts in the record supporting that conclusion. (ECF No. 14 at 19.) The ALJ mentioned plaintiff's testimony that she naps three to four times per day for about 45 to 60 minutes each time. (Tr. 22.) Plaintiff acknowledges the ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but plaintiff's statements concerning the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -16

intensity, persistence and limiting effects of those symptoms are not credible to the extent the are inconsistent with the RFC finding. (ECF No. 14 at 18, Tr. 22.) The court concludes the ALJ's credibility finding was specific and infers the ALJ rejected plaintiff's nap testimony based on the reasons cited herein. However, on remand the ALJ may revisit the credibility finding to discuss the basis for rejecting symptom testimony. *See Berry v. Astrue*, 622 F.3d 1228, 1235 (9th Cir. 2010).

## CONCLUSION

The ALJ's decision is not supported by substantial evidence and free of legal error. The ALJ failed to properly reject medical and psychological opinion evidence. On remand, the ALJ should reconsider the opinion evidence and provide legally sufficient justification for rejecting any medical or psychological opinions. The ALJ should call an expert witness or obtain additional psychological evaluations as necessary to ensure substantial evidence exists to support findings related to mental limitations. The ALJ may also revisit the credibility finding to further discuss the basis for rejecting symptom testimony.

Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 13)** is **GRANTED**. The matter is remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. 405(g).

2. Defendant's Motion for Summary Judgment **(Ct. Rec. 16 )** is **DENIED**.

3. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for plaintiff and defendant. Judgment shall be entered for plaintiff and the file shall be **CLOSED**.

DATED July 11, 2012

S/ JAMES P. HUTTON
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -17